# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.M.**

**No. 19-0046** (Randolph County 2018-JA-109)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.M., by counsel David C. Fuellhart III, appeals the Circuit Court of Randolph County's December 12, 2018, order terminating her parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melissa T. Roman, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the father in September of 2018. According to the DHHR, petitioner called 9-1-1 to report sexual abuse perpetrated by the father against their child. Petitioner reported that the father helped the child out of the bathtub and accompanied her into the bedroom to assist her in getting ready for bed. After an "awkward silence," petitioner entered the room and observed the father thrusting over the child, who was clothed only in a diaper, with an erect penis. Petitioner took the child to the hospital for evaluation. However, she subsequently recanted her statements and returned to the family home after leaving the hospital. The child remained with DHHR personnel at that time.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

An amended petition was subsequently filed in October of 2018. The amended petition added allegations that, on the night of the incident, the father confessed that his penis became a "little erect" while playing with the child and "popped out" of his boxers at the same time petitioner walked into the room. According to the father, "this is not a big deal, and he can't control it." The DHHR further alleged that approximately two weeks later the father again confessed that he was "bouncing [the child] on the bed while humping her diaper, leg, and the comforter on the bed with an erect penis." Petitioner continued to withdraw her initial allegations of sexual abuse, stating that she "overreacted" and simply observed the father playing with their child. Petitioner further stated that she "trusted [the father] with [A.M.'s] life."

At an adjudicatory hearing held in November of 2018, a recording of the father's confession was played in open court, and the DHHR presented the testimony of several witnesses, including the 9-1-1 operator, a law enforcement officer, a Child Protective Services ("CPS") worker, and petitioner. Testimony established that petitioner reported seeing the father sexually abuse the child to both police officers and CPS workers, that the father confessed to the same, and that petitioner subsequently retracted her statements regarding the abuse. Indeed, during her testimony, petitioner stated that she simply saw "a father interact[ing] with his daughter." She claimed she "premeditated" a story of sexual abuse because she presumed the worst after observing the father bounce the child on the bed and had known immediately that she made a mistake in assuming abuse by the father. Petitioner testified,

> I know I didn't see anything that was bad. I know my first reaction and my first conclusion was not anything bad. And that is what I am standing on today, that I would trust [the father] with his daughter. I did not see any of these things that I have been told. Everything I stated was fabricated, it was premeditated. I went through this whole scenario all the way down the road and I stuck with it.

Petitioner further stated that she did not understand why her child was taken from her and that she protected her as best she could. Petitioner's psychological evaluation report was also submitted into evidence. The report stated that petitioner did not have the parental capacity to care, protect, or adequately provide for the child. After hearing evidence, the circuit court found that petitioner failed to protect the child through her "willingness to return home, permit contact[,] and continue a relationship with the man that had sexual contact with her child." Accordingly, the circuit court adjudicated petitioner as an abusing parent.

Later in November of 2018, the circuit court held a dispositional hearing wherein the DHHR moved the court to take judicial notice of the testimony presented at the adjudicatory hearing, which it granted without objection. After considering the evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare, and, accordingly, terminated her parental rights. It is from the December 12, 2018, dispositional order that petitioner appeals.[2]

---

[2]The father's parental rights were also terminated below. According to the guardian, the DHHR is searching for an adoptive placement for the child and the permanency plan is adoption.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. According to petitioner, testimony established that she never intended to return to the father's home with the child. Further, she argues that testimony established that she never harmed the child and that the potential for harm in the future is insufficient to support adjudication. We disagree.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

Pursuant to West Virginia Code § 49-1-201,

> "[an a]bused child" means: (1) [a] child whose health or welfare is being harmed *or threatened by*: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to

inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment.

(Emphasis added).

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. Testimony established that petitioner called 9-1-1 to report that she observed the father sexually abusing their daughter by thrusting over her on the bed with an erect penis. During the 9-1-1 call, petitioner stated things such as "I didn't want [the father] to tell me I didn't see what I saw. I swear to God I can show you what I saw." Further, petitioner reported the abuse to CPS workers at the hospital and demonstrated the father's motions using a teddy bear as an example. However, despite these firm and definitive accounts of what occurred, petitioner subsequently retracted her statements and testified at the adjudicatory hearing that she simply saw the father "interacting" with his daughter. Petitioner stated that she overreacted and fabricated the story after assuming the worst. Despite the recording of the father's confession having been played in open court, petitioner testified that she did not believe the father had done anything inappropriate.[3] While petitioner argues that testimony established that she never stated she would return the child to the father's care, the record clearly demonstrates that petitioner stated that she would trust the father with the child's life. As set forth above, an abused child is one whose health or welfare is harmed *or threatened* by a parent who knowingly allows a parent to inflict injury upon the child. As such, contrary to petitioner's arguments, the potential threat of harm to the child was sufficient to adjudicate petitioner as an abusing parent under these circumstances in light of her recantation of the father's sexual abuse of the child. Accordingly, we find no error in this regard.

Petitioner also argues that the circuit court erred in terminating her parental rights without employing a less-restrictive alternative. According to petitioner, she demonstrated that she was entitled to a post-dispositional improvement period. Alternatively, petitioner argues that the circuit court should have granted her disposition pursuant to West Virginia Code § 49-4-604(b)(5), which allows the circuit court to "commit the child temporarily to the care, custody, and control" of the DHHR or another suitable placement upon finding that the parent is "presently unwilling or unable to provide adequately for the child's needs." We find no merit in petitioner's arguments.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . .

---

[3]To the extent petitioner is asking this Court to reassess the credibility of the testimony presented, we note that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, we find no error in the circuit court's assessment of the witnesses' credibility in making findings and rulings below.

. .”). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re: Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Moreover, pursuant to West Virginia Code § 49-4-602(d)(1), reasonable efforts to preserve the family are not required when "[t]he parent has subjected the child . . . to aggravated circumstances which include . . . sexual abuse."

We first note that the DHHR was not required to make efforts to preserve the family due to the aggravated circumstances of sexual abuse. Further, contrary to petitioner's argument, she failed to demonstrate that she was entitled to an improvement period. After her initial reports of abuse by the father, petitioner began recanting her allegations and testified, "I know I didn't see anything that was bad. . . . And that is what I am standing on today, that I would trust [the father] with his daughter." We have previously noted that

> [f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640). Accordingly, petitioner's failure to acknowledge the sexual abuse perpetrated by the father renders the circumstances of abuse untreatable and an improvement period an exercise in futility at A.M.'s expense. Therefore, we find no error in the circuit court's decision to deny petitioner an improvement period.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "No reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" means that "the abusing [parent or parents] have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(c).

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect. During the underlying proceedings, petitioner reported sexual abuse perpetrated by the father but subsequently demonstrated a complete lack of protective nature towards the child. Petitioner testified at the adjudicatory hearing that she fabricated the entire story, did not believe that the father had abused the child, and trusted the father with the child. Indeed, petitioner testified to these things after having heard the recording of the father's confession played in open court. Moreover, the psychological evaluation report contained the evaluator's opinion that petitioner's prognosis for parental improvement was poor given her failure to recognize her own problems. The evaluator further opined that petitioner did not have the parental capacity to care for, protect, or adequately provide for the child. While petitioner argues that she should have been granted a less restrictive alternative, we have previously held that

5

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's blatant denial of the abuse, we agree with the circuit court's decision that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the welfare of the child. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, because a permanent placement has not yet been found for A.M., this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child

6

is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For these reasons, we find no error in the decision of the circuit court, and its December 12, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 12, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison